**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON/GREENWOOD DIVISION**

| | |
|---|---|
| Xavier Perry, # 346891, | ) C/A No. 8:13–cv-1656-BHH-JDA |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )**REPORT AND RECOMMENDATION** |
| | ) |
| Larry Cartledge; Florence Mauney; | ) |
| Captain Abston; Captain Miller; | ) |
| Officer Moore; Ann Hallman; | ) |
| Ms. Johnson; N. C. Merchant; | ) |
| Lieutenant Lasley; Captain Degeorgis; | ) |
| Lieutenant Robertson; Lieutenant Cashwell; | ) |
| Lieutenant Church; Sergeant Palmer; | ) |
| Sergeant Arrowood; Officer Morgan; | ) |
| Ms. D. Filmore; Ms. Buttrey; | ) |
| William Byars, *individually and in their official* | ) |
| *capacities*, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 50.] Plaintiff is proceeding pro se and brings this civil rights action pursuant to 42 U.S.C. § 1983. [Docs. 1, 20[1].] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

---

[1] All substantive references to the Complaint will be to the Amended Complaint, filed on August 28, 2013. [Doc. 20].

Plaintiff filed this action on June 14, 2013, and then amended his Complaint on August 26, 2013.[2]  [Doc. 1.]  Defendants filed a motion for summary judgment on December 2, 2013.  [Doc. 50.]  On December 3, 2013, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion.  [Doc. 52.]  Plaintiff filed a response in opposition to the motion for summary judgment on March 7, 2014.  [Doc. 65.] Defendants replied on March 13, 2014.  [Doc. 67.] Accordingly, the motion is now ripe for review.

## BACKGROUND

Plaintiff filed suit against Defendants in their individual and official capacities for exposure to asbestos, inadequate ventilation, excessive cold, deprivation of basic sanitation, denial of outdoor exercise, ban on publications through incoming correspondence, ban on internet access, limits on correspondence, denial of meaningful access to the courts, corporal punishment, sensory deprivation, deliberate indifference, denial of due process, religious discrimination and various state law violations. [Doc. 20 at 8–10.]  Plaintiff was housed in the Special Management Unit ("SMU") of Perry Correctional Institution ("Perry") during the time period of the alleged events. [*Id*. at 11.]

Specifically, Plaintiff claims he was exposed to asbestos and dust inside and outside of his cell. [*Id*.] He alleges Perry had no active ventilation system and the windows and

---

[2] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on June 14, 2013 [Doc. 1-1, envelope stamped received by prison mailroom on June 14, 2013).]

doors of SMU were sealed; therefore, "mildew, mold, rust and bacteria" are "flourishing" within the unit. [*Id*. at 11–12.]   Plaintiff also reports that during the fall and winter of 2012 and 2013, prisoners in SMU were subjected to extremely cold temperatures because prison officials refused to turn on the heat and, in fact, kept the air conditioning running in the unit to maintain the cold temperatures. [*Id*. at 12.]   He claims that his drinking water was contaminated and drinking it has resulted in a sore throat and stomach pains. [*Id*. at 13.] Plaintiff was refused toothpaste and soap after he ran through his monthly allotment, which was insufficient to last for that time period. [*Id*.] Plaintiff was also denied supplies to clean his cell more than once a week and, when such supplies were provided, he was denied chemical cleaners.  [*Id*. at 14.]

Further, Plaintiff alleges that while in SMU, he and others were denied the right to outdoor exercise for arbitrary reasons. [*Id*. at 15.] Plaintiff accuses Defendants of falsifying documents to show that the SMU prisoners have been given outdoor exercise when they have not. [*Id*. at 17.] Plaintiff also complains that he did not have a desk to write on and thus experienced back pain. [*Id.* at 18.]   Plaintiff alleges that there is a total ban on all publications sent to SMU prisoners and that Plaintiff did not receive books, magazines, newspapers or "internet generated information." [*Id*.]   Moreover, Plaintiff claims his correspondence was further limited because he was not allowed to receive mail with "markings/symbols on the envelope, newspaper and magazine clippings, crossword puzzles, information printed from the internet, greeting cards with glitter on them, letters that smell of perfume or fragrances, and letters with lipstick lip prints on them." [*Id.* at 19.] Plaintiff writes that he is banned from receiving religious publications in SMU. [*Id*. at 20.]

3

Plaintiff alleges that the lights are left on constantly in SMU and therefore Plaintiff finds it very difficult to sleep. [*Id*.]   He claims his access to the courts has been unreasonable limited because he does not have the requested legal writing materials or copies of his grievances. [*Id.* at 21.]  Plaintiff also complains about changes to the inmate grievance system and that his informal attempts to resolve grievances have been ignored. [*Id*. at 22.]

On October 12, 2012, Plaintiff was placed in the "control cell" as punishment for striking a correctional officer. [*Id*. at 23.] Plaintiff was "completely deprived of all basic hygienic items, clothing, bedding and mattress, shows, towel and washcloth" for approximately 72 hours, during which period he was miserably cold. [*Id*.]  Plaintiff was also not provided with toilet paper or eating utensils.  [*Id*.]   After being released from the control cell, Plaintiff was provided with a jumpsuit, socks, towel and washcloth but not his other property.  [*Id*. at 24.]   As a result, Plaintiff was not allowed to shower for two months because he did not have underwear or shower shoes as required by policy. [*Id*.] Plaintiff also developed blisters on his feet. [*Id*.]  Plaintiff argues he has been placed in and kept in security detention status without the benefit of due process because he is not allowed to appear in front of the committee who decides on inmate security status.  [*Id*. at 24–26.] Finally, Plaintiff alleges that prescription medication in the SMU was being distributed by individuals who are not authorized medical personnel.  [*Id.* at 27.]

## **APPLICABLE LAW**

### **Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519,

520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, a pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means that only if the court can reasonably read the pleadings to state a valid claim on which the complainant could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the complainant's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

5

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States;" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly

6

be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this

7

standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

### DISCUSSION[3]

---

[3] To the extent Plaintiff attempts to bring claims on behalf of other unnamed inmates, such claims must fail. A prisoner cannot represent other prisoners in a class

(continued...)

In their motion for summary judgment, Defendants argue summary judgment should be granted because Plaintiff has not exhausted his administrative remedies and because he does not allege a valid constitutional violation. The Court agrees summary judgment should be granted.

**Exhaustion of Administrative Remedies**

The Court will first consider Defendants' claim that they are entitled to summary judgment on Plaintiff's claim because Plaintiff failed to exhaust his administrative remedies prior to initiating litigation as required by 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act ("PLRA") defines a "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The PLRA requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. 42 U.S.C.A. § 1997e(a). The Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

An inmate's failure to exhaust administrative remedies is an affirmative defense that must be properly raised by the defendant. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407

---

[3](...continued)
action law suit. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4 th Cir. 1975). Therefore, the Court recommends that summary judgment be granted as to the alleged claims of other prisoners, including the claim that non-medical personnel are dispensing medication. The discussion will focus on Plaintiff's personal allegations.

F.3d 674, 681 (4th Cir. 2005); *see also Jones v. Bock*, 549 U.S. 199, 216 (2007). Exhaustion is defined by each prison's grievance procedure, not the PLRA; an inmate must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones*, 549 U.S. at 218.  However, as the United States Supreme Court has emphasized, an inmate can only exhaust those administrative remedies that are available to the inmate. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Prisoners must now exhaust all 'available' remedies, not just those that meet federal standards."); 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . until such administrative remedies as are *available* are exhausted." (emphasis added)).  Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes Step 2 of the South Carolina Department of Corrections ("SCDC") grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court.  *See, e.g.*, *Ayre v. Currie*, Case No. 05-CV-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007);  *Charles v. Ozmint*, Case No. 05-CV-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).

The SCDC grievance policy provides that, after unsuccessfully attempting to informally resolve a grievance, inmates may complete a Form 10-5, Step 1, and submit the form to the proper employee within five days of the alleged incident about which the inmate complains.  [Doc. 50-20 at 10.]  Within three working days, the grievance is entered into the automated system and given to the Inmate Grievance Coordinator.  [*Id.* at 11.]  Within three working days of receiving the grievance, the Inmate Grievance Coordinator completes the additional text for the grievance and attempts to resolve the matter informally.  [*Id.*]  After the Inmate Grievance Coordinator's investigation, and no later than

10

45 days from the time the text for the grievance has been entered into the automated system, the Warden responds to the inmate in writing. [*Id.*] The response is served by the Inmate Grievance Coordinator to the inmate within ten days, and the inmate signs and dates the response to acknowledge receipt. [*Id.*] If the inmate is not satisfied with the decision, he may appeal it by completing a Form 10-5a, Step 2, and submitting the Form to the Inmate Grievance Coordinator within five days of the receipt of the response by the inmate. [*Id.* at 12.] The Inmate Grievance Coordinator forwards the Step 2, the Step 1, and copies of necessary documentation to the Inmate Grievance Branch within five days; and the responsible official will render the final decision on the grievance within 90 days from the date the Inmate Grievance Coordinator received the appeal of the Warden's decision. [*Id.*] The Inmate Grievance Coordinator then serves the response to the inmate within ten working days, and the inmate signs and dates the response to acknowledge receipt. [*Id.*] The decision of the responsible official is the final response in the matter. [*Id.*]

Here, Plaintiff filed a Step 1 Grievance on October 18, 2012, claiming that he did not receive his shoes, sneakers, underwear or utensils. [*Id.* at ¶ 6.] The grievance was returned to him unprocessed because he attempted to raise multiple issues and Plaintiff did not correct the grievance or file a Step 2 Grievance. [*Id.*] On February 6, 2013, Plaintiff filed a Step 1 Grievance that he only received cleaning supplies once a week. [*Id.* at ¶ 7.] The Warden responded that inmates were permitted to clean their cells on weekends, and Plaintiff did not appeal. [*Id.*] Also on February 6, 2013, Plaintiff filed a Step 1 Grievance alleging that his cell had poor ventilation; this grievance was denied. [*Id.* at ¶ 8.] Plaintiff filed at Step 2 grievance on April 29, 2013 which was stamped received May 3, 2013 and

is still pending. [*Id.* at 21.] Plaintiff's third grievance filed on February 6, 2013, alleged that he was denied meaningful access to the courts.   [*Id.* at ¶ 9.]  The Step 1 Grievance was returned to Plaintiff unprocessed because Plaintiff failed to list a specific date or incident, as required per policy. [*Id.*]   Plaintiff did not correct or refile the grievance. [*Id.*]

On February 7, 2013, Plaintiff filed a Step 1 Grievance that he was not being provided with out of cell recreation; this grievance was denied.  [*Id.* at ¶ 12.]  Plaintiff filed a Step 2 Grievance on April 29, 2013 which was stamped received on May 3, 2013 and is currently pending. [*Id.* at 28.]  On February 20, 2013, Plaintiff filed a Step 1 Grievance because he had been denied access to the courts.  [*Id. at* ¶ 10.] This grievance was returned to Plaintiff unprocessed because he his February 7, 2013, grievance was still pending and, per policy, inmates may not have multiple grievances pending at one time. [*Id.*]  On April 11, 2013, Plaintiff filed a Step 1 Grievance that he was placed on security detention. [*Id.* at ¶ 13.] The grievance was returned because Plaintiff failed to articulate how he attempted to informally resolve the grievance. [*Id.*] Plaintiff did not refile this grievance. [*Id.*]  Finally, on April 21, 2013, Plaintiff filed a Step 1 Grievance that he was being denied correspondence. [*Id.* at ¶ 11.]  Plaintiff filed a Step 2 Grievance[4] after the Warden responded, and such grievance is still pending [*Id.*]

As shown above, Plaintiff did not exhaust his administrative remedies as to his missing property, his cleaning supplies, his access to courts, or his security detention because he only filed a Step 1 Grievance for these claims.  Additionally, Plaintiff filed no

_____

[4]This Step 2 grievance was not made a part of the record.  For purposes of this motion, the Court will presume this Step 2 grievance has, likewise, been pending since at least May 3, 2013.

grievances as to his religious rights and the alleged violation of his constitutional right to practice his religion. In his response, Plaintiff's only argument against Defendants' assertion that he failed to exhaust his administrative remedies is that Defendants have failed to produce any documentation or evidence to prove that Plaintiff failed to exhaust. [Doc. 65 at 2.] However, Defendants have provided the Court (and served on Plaintiff), an exhaustive recitation of Plaintiff's grievances, an affidavit from the Inmate Grievance Counselor detailing Plaintiff's grievances, attachments of SCDC policy and attachments of Plaintiff's grievances. [Doc. 50-20.] Therefore, summary judgment is appropriate as those claims on which Plaintiff only filed a Step Grievance or failed to file a grievance.

With respect to Plaintiff's pending Step 2 grievances, several circuits have held a grievance may be considered exhausted under the PLRA when a prisoner files a grievance but has not received a timely determination. *See McMichael v. Pate*, 2014 WL 793070, *8(D.S.C.,2014), *citing, Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 996 (6th Cir.2004) (concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir.2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable ...."); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir.2001) ("[O]nce [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); and *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir.1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). In this case, Plaintiff has three Step 2 grievances which have been pending over a year. Defendants have not asserted that an

13

extension was granted with respect to Plaintiff's grievance or that some other exception applies. At this stage of the litigation, the Court has taken judicial notice of the SCDC grievance process, which states a responsible SCDC official will have sixty days to respond to the Step 2 Grievance plus five days for the grievant to be heard, and Plaintiff alleges the policy states a responsible official will respond within ninety days. Under either of these scenarios, Plaintiff's grievances were not timely processed; accordingly, the Court will consider Plaintiff's claims of poor ventilation, out-of-cell recreation, and correspondence on the merits.

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at Perry [*see* Doc. 61 (notice of change of address)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *See Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his release from Perry, *see id.*, and, as public officials, Defendants are subject to suit for damages in their individual capacities[5]

---

[5]Plaintiff brings this suit against Defendants in their official capacities under § 1983. Defendants are entitled to immunity pursuant to the Eleventh Amendment in their official capacities from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g., Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary (continued...)

in a §1983 lawsuit, *see Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991).

**Conditions of Confinement**

Plaintiff essentially makes two conditions of confinement claims–that his cell had poor ventilation (and, therefore, mold and asbestos) and that he was denied out-of-cell recreation.  Prisoners' conditions of confinement claims are analyzed under the Eighth Amendment.  Under the Eighth Amendment, a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  To satisfy the objective component the test articulated in *Farmer* and show that a deprivation is extreme enough to constitute an Eighth Amendment claim, "a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)).

During the time period set forth in the Complaint, Plaintiff was an inmate in a state prison, not a guest in a hotel, and it should be expected that conditions in such a setting

---

[5](...continued)
damages under 42 U.S.C. § 1983.  *Id.*  As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.

are often times less than ideal. *See, e.g.*, *Bell v. Wolfish,* 441 U.S. 520, 537 (1979) ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel.").

Moreover, Plaintiff has failed to allege or demonstrate any serious physical or mental injury resulting from the conditions of which he complains or that there was a significant risk of harm from the challenged conditions. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." (citations and internal quotation marks omitted)). Plaintiff fails to demonstrate any such injury here. Therefore, Plaintiff's allegations about the ventilation conditions at Perry, which are supported only by his bare assertions, are insufficient to raise a genuine issue of fact as to whether any of his constitutional rights were violated. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in conditions of confinement and the denial of privileges are matters that every prisoner can anticipate and are necessarily functions of prison management and must be left to the

16

broad discretion of prison administrators to enable them to manage the prisons safely and efficiently).  Additionally, though Plaintiff failed to raise a genuine issue of material fact in dispute, Defendants submitted an affidavit from Florence Mauney, Associate Warden at Perry, who avers that the SMU dorm was built out of cinder block, with no asbestos, that each cell has its own air vents and that the temperature is set systemwide to 68 degrees (for heat) or 74 degrees (for air conditioning). [Doc. 50-7 at 2–3.]  Plaintiff's conditions of confinement claim as to ventilation has no merit.

When reviewing an Eighth Amendment claim for lack of outdoor exercise, courts are to examine the totality of the circumstances.  *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992).   While the Fourth Circuit has not found lack of exercise to be per se unconstitutional, the Circuit Court has acknowledged that "generally a prisoner must be provided some opportunity to exercise."  *Id.* at 192.  Here, Plaintiff alleges that he was denied exercise for "arbitrary reasons," but Defendants provided evidence showing that prisoners are denied out of door exercise according to a specified policy, under which an inmate who fails to follow SMU policies and procedures has his out-of-cell exercise time canceled. [Doc.50-7 at 2.]   A prison regulation infringing a prisoner's constitutional rights is valid if the regulation "is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In *Turner*, the United States Supreme Court articulated a four-part test to determine whether a prison regulation is reasonable,[6] but as Plaintiff

---

[6] The four factors are (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation.  *Turner*, 482 U.S. (continued...)

17

does not challenge the validity of Perry's regulations or allege any significant injury as a result of the regulations, the Court has no basis for finding the regulations unreasonable. Moreover, Plaintiff's loss of his outside exercise was a direct result of his own actions and the discipline he incurred, which is not constitutionally objectionable under the circumstances. *See Williams v. Jackson*, Case No. 8:07-CV-3661-CMC-BHH, 2009 WL 363450, at *11 (D.S.C. Feb. 10, 2009). Consequently, Defendants' motion for summary judgment should be granted as to Plaintiff's conditions of confinement claims.

**Claims of Failure to Intervene or Respond to Requests or Grievances**

Plaintiff alleges Defendants failed to intervene or respond to Plaintiff's requests and grievances  The Court finds that even if Plaintiff's allegations are true, Defendants' actions would not constitute a constitutional violation and cannot be remedied through a § 1983 action. There is no constitutional right to a grievance procedure*. Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1944); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983). Therefore, Plaintiff does not have a § 1983 cause of action based on his allegations that Defendants refused to intervene or respond to Plaintiff's request and grievance forms.

**Mail and Publications**

---

[6](...continued)
at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

Generally, a prisoner enjoys a First Amendment right to receive and send mail, but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner,* 482 U.S. at 89.   Legitimate penological interests include preserving prison security and maintaining order and discipline.   Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (citation omitted).

Defendants contend Plaintiff is not permitted to receive certain publications or other correspondence because of his classification in SMU and that these restrictions apply to all SMU inmates to protect public safety, institutional order, and security.  [Doc. 50 at 20–23.]   Defendants   have provided the affidavit of Nancy Merchant, the postal director/mailroom supervisor at Perry, who avers that mail is processed in accordance with SCDC Policy PS-10.08, which provides that inmates housed in SMU are not permitted to receive publications including newspapers, magazines, newsletters, and periodicals. [Doc. 50-2 at 8.]  Merchant attested that the Department of Corrections established the policies and procedures associated with SMU inmates' mail, not any individual at Perry. [*Id.*]  The policy acts as a deterrent to contraband and to encourage inmates to avoid placement in SMU. [*Id*.]  It appears here that Defendants followed the applicable prison regulations.

Plaintiff does not contend that SCDC Policy PS-10.08 fails to meet some penological interest or that no alternative avenues remain open for him to exercise his First Amendment rights.  For instance, Plaintiff was able to request materials through the prison

19

library and had access to legal materials and the internet. [Doc. 50-5 at 1.] Plaintiff was

able to request three books at a time from the library. [*Id.* at 2.] Plaintiff was also allowed

to obtain religious materials from Perry's chaplain.[7] [Doc. 50-22 at 2.]  The burden of proof

is not on Defendants to prove the validity of prison regulations; rather, the burden is on

Plaintiff to disprove it.  *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).  Plaintiff has

failed to do so in this case.  Accordingly, Defendants' motion for summary judgment should

be granted as to this claim.[8]

---

[7] To the extent Plaintiff attempts to make a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), such claim fails.  RLUIPA prohibits government from using a land use regulation to 'impose a substantial burden on the religious exercise of a person" unless that restriction "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1. Plaintiff here has failed to demonstrate, or even allege, that the policies at Perry imposed a substantial burden on his exercise of religion.

[8] Although not clear from the Complaint, if Plaintiff alleges his legal mail was opened outside of his presence in violation of his constitutional rights [*see* Doc. 1 at 3 ¶ 3], the Fourth Circuit, in *Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999), held "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ."  However, in a footnote, the court noted "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549 n.14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)).  Legal mail should not be opened outside of the presence of the prisoner-addressee.  *See Wolff*, 418 U.S. at 575.  However, to state a claim for a constitutional violation, a plaintiff must show actual injury by the opening. *Lewis*, 518 U.S. 352–54.  To show an actual injury, an inmate must "demonstrate that a non-frivolous legal claim had been frustrated or was being impeded." *Id.* at 353.  The prisoner must make specific allegations as to the actual injury sustained.  *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding the plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993) (holding the plaintiff had a "basic requirement that he show specific harm or prejudice from the allegedly denied access").

Here, even assuming a named Defendant opened and read the mail, which is not specifically alleged, Plaintiff fails to allege specific facts that would tend to show a pending non-frivolous legal case, or any other legal matter, has been adversely affected due to his mail allegedly being opened outside his presence.  Plaintiff fails to allege how his mail

(continued...)

**Liability Based On a Theory of Supervisory Liability**

To the extent Plaintiff alleges that certain Defendants are liable to him in their supervisory capacity, such claims fail. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[9]

---

[8](...continued)
being opened when he received it would have prevented Plaintiff from proceeding with his claims.

[9] Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 (continued...)

21

*Id.* (citations omitted).  Plaintiff has failed to allege any facts to show that any official was aware of a pervasive and unreasonable risk of harm.  Therefore, Defendants should be granted summary judgment on any allegations of supervisory liability.

**Qualified Immunity**

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ...

---

⁹(...continued)
F. Supp. 782 (N.D. Ohio 1975)).  A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 693 (2009) (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely.  The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects.").  A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'"  *Id.* at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)).  Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions.  *See Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken ." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819).  For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

23

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights. Therefore, Defendants are entitled to qualified immunity.

**State Law Claims**

To the extent Plaintiff attempts to allege a state law claim in addition to his § 1983 claim, such a state law claim could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[10]  Federal courts are permitted to decline supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction."  To the extent Plaintiff bases his claim on state law, the Court recommends that the district judge decline to exercise supplemental jurisdiction in this case.

<u>**RECOMMENDATION**</u>

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 50] be GRANTED.


s/ Jacquelyn D. Austin
United States Magistrate Judge

August 6, 2014
Greenville, South Carolina

––––––––––––––––––

[10]A civil action for Plaintiff's state law claims could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens of the State of South Carolina, which defeats the required complete diversity of parties. *See* 28 U.S.C. § 1332.

**Notice of Right to File Objections to Report and Recommendation**

Plaintiff is advised that he may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).